UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THAVATSAY PHIMMOUNGKHOUN, | CASE NO. C26-1689JLR |
| Petitioner, | ORDER |
| v. | |
| BRUCE SCOTT, et al., | |
| Respondents. | |

## I.   INTRODUCTION

Before the court is Petitioner Thavatsay Phimmoungkhoun's petition for a writ of habeas corpus under 28 U.S.C. § 2241 and emergency motion for a temporary restraining order ("TRO").  (Pet. (Dkt. # 1); TRO (Dkt. # 8); Traverse (Dkt. # 21).)  The Government[1] opposes the petition and the TRO.  (Return (Dkt. # 12).)  The court has

---

[1] The Federal Respondents are Acting Field Office Director for Immigration Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") in Seattle, Washington,

ORDER - 1

considered the petition, the parties' submissions, the relevant portions of the record, and the applicable law.  Being fully advised, the court GRANTS the petition and DENIES the TRO as moot.

## II.   BACKGROUND

Petitioner is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  (Pet. ¶ 39.)  Petitioner was born in Laos and later entered the United States as a refugee on September 2, 1987, when he was seven years old.  (*Id*. ¶¶ 25, 27.)  On October 13, 1988, Petitioner adjusted status and became a Lawful Permanent Resident ("LPR").  (Britt, Jr. Decl. (Dkt. # 13) ¶ 5.)  On October 23, 2007, Petitioner pleaded guilty in the U.S. District Court for the District of Oregon to one count of conspiracy to distribute a controlled substance and was sentenced to 46 months in federal custody.  (Pet. ¶ 31.)  On November 7, 2011, after Petitioner completed his sentence, ICE took custody of Petitioner and placed him in removal proceedings.  (*Id*. ¶ 32.)  On November 19, 2011, an Immigration Judge ("IJ") in El Paso, Texas, ordered Petitioner removed to Laos.  (*Id*.; *see also* Morris Decl. (Dkt. # 14), ¶ 2, Ex. 3 (IJ Order).)

On February 3, 2012, ICE released Petitioner on an order of ICE supervision ("OSUP").  (Pet. ¶ 33; Morris Decl. ¶ 2, Ex. 4 (OSUP).)  The conditions of release included, in relevant part, a requirement that Petitioner complete monthly check-ins at the ERO office in Portland, Oregon.  (*See* OSUP at 5.)  Petitioner represents that, since his

---

Laura Hermosillo; Secretary of the Department of Homeland Security ("DHS") Markwayne Mullin; DHS; Acting Director and Senior Official of ICE Todd Lyons; ICE (together, the "Government").  (Pet. ¶¶ 10-12, 23-24.)

ORDER - 2

release from immigration custody 15 years ago, he has fully complied with all of the requirements of his supervision and has never missed a check-in with ERO.  (Pet. ¶ 34.)

On April 23, 2026, ERO arrested Petitioner in Beaverton, Oregon, during a targeted immigration enforcement operation.  (Britt, Jr. Decl. ¶ 13.)  Prior to his re-arrest, the Government did not provide Petitioner with notice or a hearing.  (Pet. ¶ 39; *see also* Phimmoungkhoun Decl. (Dkt. # 19) ¶¶ 4-6 (attesting the same); Britt, Jr. Decl. ¶¶ 14-15 (representing that the Government provided Petitioner with a notice of revocation and an informal interview).)  On May 18, 2026, Petitioner filed the instant habeas petition asserting four bases for relief, specifically that his re-detention violates procedural due process, substantive due process, as well as the implementing regulations of the Administrative Procedure Act, and that his attempted removal to Laos constitutes punitive banishment in violation of the Fifth and Eighth Amendments.  (*See generally* Pet.)  He seeks three forms of relief: (1) his immediate release from federal custody pursuant to 28 U.S.C. § 2241; (2) an order enjoining the Government from re-detaining Petitioner without notice or a hearing before the court, and unless Petitioner violates the conditions of the OSUP; and (3) an order preventing his re-detention unless and until the El Paso, Texas, immigration court denies his May 22, 2026 motion to reopen and motion to stay removal proceedings based on his eligibility for humanitarian protection. (Pet. ¶¶ 3, 43-44; Britt, Jr. Decl. ¶ 16.)

On May 27, 2026, the Government filed a notice of intent to remove Petitioner to Laos within forty-eight hours.  (*See generally* 5/27/26 Not. (Dkt. # 7).)  On May 29, 2026, Petitioner filed an emergency TRO motion moving the court for an order directing

the Government not to remove Petitioner from the NWIPC until such time that (1) the court rules on the pending Petition, and (2) the immigration court adjudicates the pending motion to reopen that he submitted in May 2026. (TRO at 2.) On May 29, 2026, the court issued an order (1) granting the TRO motion for the purpose of maintaining the status quo until it reviewed the merits of the TRO motion after full briefing, and (2) prohibiting the Government from removing Petitioner to any country or from the NWIPC during the pendency of the proceedings. (*See generally* 5/29/26 Order (Dkt. # 11).) On June 2, 2026, the Government filed an opposition to the Petition and TRO motion. (*See generally* Return.) On June 8, 2026, Petitioner filed a reply. (*See generally* Traverse.) The parties have fully briefed both filings and they are ripe for the court's consideration.

## III.   ANALYSIS

Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

**A.   The Government's Re-Detention of Petitioner is Unlawful.**

Petitioner (1) challenges his re-detention as a violation of his due process rights, the detention statute and its implementing regulations, as well as the written conditions of the OSUP, and (2) asserts that the court should order his immediate release. (Traverse at 2.) The court agrees with Petitioner for the reasons provided below.

Once the Government releases a noncitizen on an OSUP, re-detention is only permitted under certain circumstances. 8 C.F.R. § 241.13(i) provides that ICE may

revoke a noncitizen's release under 8 U.S.C. § 1231 and return them to ICE custody (1) for failure to comply with conditions of release, or (2) if, pursuant to a change in circumstances, ICE "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Re-detention pursuant to § 241.13(i) requires notice and an opportunity for the noncitizen to be heard. *Id*. § 241.13(i)(3)(setting forth that after the noncitizen is notified of the reasons for the revocation of their release, the noncitizen must have an opportunity to respond to those reasons by "submit[ing] any evidence or information that [the noncitizen] believes shows there is no significant likelihood [they] will be removed in the reasonably foreseeable future, or that [they have] not violated the order of supervision").

First, Petitioner asserts that he has fully complied with the conditions of his OSUP for the past 14 years. (Traverse at 3.) The Government does not meaningfully address in its briefing Petitioner's record of compliance with the OSUP. (*See generally* Return.) Additionally, the Notice of Revocation of Release provided by the Government states that it revoked Petitioner's release because "ICE is seeking a travel document to effect [] expeditious removal to Laos" rather than because Petitioner violated a condition of his release. (Morris Decl. ¶ 2, Ex. 5 (Notice of Revocation) at 1-2 (leaving unchecked the box that indicates that Petitioner violated a condition of his release).) Thus, the court agrees with Petitioner that the Government has not established that he failed to comply with the conditions of his release or that it can lawfully re-detain him on this basis.

Second, as to re-detention under § 241.13(i)(1), the court agrees with Petitioner that the Government's actions do not comport with the governing law. (Pet. ¶¶ 86-91.)

ORDER - 5

Although the Government is permitted to re-detain noncitizens when "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," the Government remains subject in all respects to an obligation to effectuate that re-detention in a manner that comports with the Fifth Amendment.  8 C.F.R. § 241.13(i)(1)-(2); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.") (citations omitted); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025) (finding that, even when the government believes it has a lawful basis for detaining a noncitizen, it must carry out that detention in a manner that complies with due process).

Here, the Government fails to show that it complied with the 8 C.F.R. § 241 requirement to provide Petitioner with notice and an opportunity to be heard before revoking his release.  (*See generally* Return); 8 C.F.R. § 241.13(i)(1)-(2).  Although the Government claims that ICE provided Petitioner with a notice of revocation of the OSUP, advised Petitioner of the basis for the revocation, and afforded Petitioner an informal interview, it has adduced no evidence by which the court may evaluate the credibility of these claims.  (Return at 2; *see also id*. at 9 (asserting that the Government was not required "to provide Petitioner with a pre-deprivation notice and a hearing before re-detaining him or revoking his [OSUP]").)  Petitioner disputes the Government's account and asserts that "ICE never served any paperwork on him at the time of his arrest and did not ask him to sign any documents, including to sign that he was served with the Notice of Revocation of Release." (Traverse at 5-6 (citing Phimmoungkhoun Decl. ¶ 4; Pet.

¶¶ 40-41).)  Petitioner also asserts, and the Government does not dispute, that "ICE never provided Petitioner with a copy of his travel document."  (*Id*. at 6 (citing Pet. ¶ 40).)  Because the procurement of the travel document was the sole basis for Petitioner's re-detention, the court agrees with Petitioner that, without it, Petitioner could not have offered a meaningful response to the reason for his revocation.  (*Id*.)  Furthermore, the Form I-213 provided by the Government states that ICE prepared Forms I-205 (Warrant of Removal/Deportation) and I-294 (Warning to Alien Ordered Removed or Deported) to be served later on Petitioner.  (Morris Decl. ¶ 2, Ex. 3 (I-213) at 3.)  The Government, however, does not address in its briefing whether it later served these forms on Petitioner.  (*See generally* Return.)  Finally, the Informal Interview form is blank where the notation of the deportation officer and the officer's conversation with the Petitioner following revocation of Petitioner's release would be recorded, consistent with Petitioner's statement that the Government did not actually conduct such an interview.  (Notice of Revocation at 4.)  For these reasons, the court concludes that the Government's re-detention of Petitioner is unlawful.

Because Petitioner has proven by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[,]" the court will grant the petition and order his immediate release.  28 U.S.C. § 2241(c); *Davis*, 384 F.3d at 638.

**B.    The Court Grants Petitioner's Requests for Permanent Injunctive Relief.**

Federal courts have jurisdiction to dispose of habeas matters "as law and justice require."  28 U.S.C. § 2243.  The statute "does not limit the relief that may be granted to

discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968).  Rather, district courts "enjoy 'broad' discretion in fashioning remedies for habeas relief." *Johnson v. Uribe*, 700 F.3d 413, 425 (9th Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).

In additional to his immediate release, Petitioner requests two forms of additional relief: (1) an order enjoining the Government from re-detaining him without notice or a hearing before the court, and unless Petitioner violates the conditions of the OSUP; and (2) an order preventing his re-detention unless and until the El Paso, Texas, immigration court denies his motions to reopen and to stay removal proceedings.  (Pet. ¶ 3.)  The court grants Petitioner's requests for the reasons set forth below.

1.   Petitioner's Request for Notice and a Hearing Prior to Re-Detention

The court may provide injunctive relief if Petitioner meets the standard for a permanent injunction.  "According to well-established principles of equity, a [petitioner] seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Petitioner must demonstrate: "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between [him] and [the Government], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*. (citations omitted).  "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v.*

*Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *see also Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights.") (citations omitted).

First, Petitioner has suffered irreparable harm, and such harm is likely to recur absent injunctive relief to protect against further constitutional violation. Specifically, the Government has already detained him without due process and identified him as a target for detention. Despite this court's many orders holding that the Government's conduct in revoking release and re-detaining noncitizens without due process is unconstitutional, the conduct has continued. *See, e.g.*, *Vo v. Scott*, No. C26-00135JNW, 2026 WL 445046, at *5 (W.D. Wash. Feb. 17, 2026) ("[D]istrict courts have consistently held that before revoking an OSUP (or similar release order), the Government must provide pre-deprivation notice and a hearing.").

Thus, absent injunctive relief, Petitioner may be subject to the same violative conduct again. The other *eBay* factors similarly favor injunctive relief. Monetary damages are an inadequate remedy for deprivation of liberty; requiring the Government to follow constitutional procedures imposes no undue hardship; and the public interest favors compliance with the law. *eBay*, 547 U.S. at 391.

Accordingly, the court finds it appropriate to prohibit re-detention of Petitioner absent notice and opportunity to be heard and proof that the Government has obtained a valid travel document, as described more fully below. Several courts in this district have granted similar relief. *See Wana v. Bondi*, No. C25-2321RSL, 2025 WL 3628634, at *6

ORDER - 9

(W.D. Wash. Dec. 15, 2025) (prohibiting re-detention without notice and hearing); *Tzafir v. Bondi*, No. C25-2067JHC-SKV, 2026 WL 74088, at *5 (W.D. Wash. Jan. 9, 2026) (same); *Yuksek v. Bondi*, No. C25-2555DGE-GJL, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do v. Scott*, No. C25-2187RSL, 2025 WL 3496909, at *4 (W.D. Wash. Dec. 5, 2025) (prohibiting re-detention without a valid travel document and other specified conditions).

    2.   <u>Petitioner's Request for Notice and a Hearing Prior to Removal to Laos</u>

Finally, Petitioner seeks an order prohibiting his removal to Laos—under conditions that did not previously exist when the IJ ordered him removed to Laos and threaten serious harm—without notice and a meaningful opportunity to respond in re-opened removal proceedings. (Traverse at 21-23.) In response, the Government asserts that the court lacks jurisdiction to grant this request under 8 U.S.C. § 1252(g), which strips district courts of jurisdiction over certain immigration actions. (Return at 14-15.) The court disagrees with the Government and grants the request for the following reasons.

The Ninth Circuit has held that challenges to the right to meaningful notice and an opportunity to present a fear-based claim before removal fall outside the scope of § 1252(g). *Ibarra-Perez v. United States*, 154 F.4th 989, 996–97 (9th Cir. 2025) (finding that purely legal challenges to last minute removal without the opportunity to present a fear-based claim fall outside § 1252(g)). Nor does § 1252(g) "prevent the district court from exercising jurisdiction over the plaintiff's due process claims." *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998). The Supreme Court, too, has interpreted § 1252(g)

narrowly, limiting it to only "three discrete actions[:]" the "decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti– Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (quoting 8 U.S.C. § 1252(g)) (internal quotation marks omitted and emphasis in original). Furthermore the Supreme Court has rejected any reading of the statute that would cover "the universe of deportation claims," *id.*, and cautioned against interpreting it to "sweep in any claim that can technically be said to 'arise from' the three listed actions[,]" *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see AADC*, 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").

Here, Petitioner asserts that the Government intends to remove him to Laos without affording him due process and the statutory protections to which he is entitled. (Pet. ¶¶ 43-44; Traverse at 20-23.) He does not contend that ICE is prohibited from removing him from the United States; instead, he argues that he has a right to meaningful notice and an opportunity to present a fear-based claim before he is removed. (Traverse at 21 (citing *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (finding that Government conduct that denies a petitioner the opportunity to present evidence of persecution that he would face if removed to a country is violative of due process)); *see also* Traverse at 20-23 (asserting that the Government's attempted removal of Petitioner constitutes punitive banishment).) Because of the nature of Petitioner's challenges, the court rejects the Government assertion that § 1252(g) strips the court's jurisdiction to provide the requested relief. *See Ibarra-Perez*, 154 F.4th at 996-97.

ORDER - 11

The court further agrees with Petitioner that due process entitles him to an opportunity to claim protection against the harm he faces through a motion to reopen in immigration court. (Pet. at 21-22.) In so holding, the court adopts the reasoning set forth in *Nguyen v. Bondi*, No. C25-2723RAJ, 2026 WL 183819, at *7 (W.D. Wash. Jan. 23, 2026). The facts of *Nguyen* mirror those of the instant case in material respects. In *Nguyen*, the petitioner was a citizen of Vietnam who entered the United States during childhood as a refugee following the Vietnam War. *Nguyen*, 2026 WL 183819, at *1. The petitioner later amassed a series of criminal convictions. *Id*. A federal court convicted the petitioner for conspiracy to distribute methamphetamine and, after completing his sentence, the Government placed the petitioner in immigration custody. *Id*. The Government later released the petitioner on an OSUP, and, for approximately 14 years, the petitioner fully adhered to the conditions of his release. *Id*. Subsequently, without a precipitating event, ICE re-detained the petitioner under the auspices of removing him to Vietnam. *Id*. at *7 (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 729 (W.D. Wash. 2025)). The *Nguyen v. Bondi* court clarified the process that a noncitizen is constitutionally due before removal:

> The guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim. Both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.

*Nguyen*, 2026 WL 183819, at *7 (cleaned up and citations omitted).

ORDER - 12

Petitioner has adduced evidence showing that due to his specific circumstances, the Government's attempted rushed removal to Laos would deny Petitioner access to the process that he is constitutionally due. (*See* Traverse at 23 (so arguing); *see also* Ha Decl. (Dkt. # 3) at 2-6 (describing the status of U.S. deportees in Laos).) Accordingly, the court grants the requested relief and orders that the Government stay Petitioner's removal until such time that the immigration court decides Petitioner's pending motion to reopen and motion to stay removal proceedings based on his eligibility for humanitarian protection.

**C.     The Court Denies the TRO Motion as Moot.**

In light of the court's ruling granting the underlying petition in all respects, any temporary relief sought is unnecessary. Thus, Petitioner's motion for a temporary restraining order is denied as moot.

**IV.     CONCLUSION**

Accordingly, the court GRANTS the petition for a writ of habeas corpus (Dkt. # 1) and DENIES as moot the motion for temporary restraining order (Dkt. # 8). The court ORDERS that Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(1) SHALL release Petitioner Thavatsay Phimmoungkhoun from detention within FORTY-EIGHT (48) hours pursuant to the conditions of his most recent Order of Supervised Release;

ORDER - 13

(2) SHALL NOT re-detain Petitioner absent 30 days' notice and an opportunity to be heard before an immigration judge to determine whether re-detention is appropriate;

(3) SHALL stay Petitioner's removal until such time that the immigration court decides Petitioner's pending motion to reopen and motion to stay removal proceedings based on his eligibility for humanitarian protection; and

(4) SHALL NOT remove or attempt to remove Petitioner to Laos or any other country where he may be subject to imprisonment without at least 30 days' notice of a travel document and a scheduled deportation flight and provides him an opportunity to appear for a scheduled flight without detention.

Dated this 17th day of June, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 14